UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

AARON XAVIER JOHNSON,

               Plaintiff,

v.

UNKNOWN GOODSPEED et al.,

               Defendants.

_____/

Case No. 1:25-cv-760

Honorable Sally J. Berens

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983.  Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 1, PageID.10.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is

fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Mackey, Briskey, Lantner, and Brown. The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Goodspeed, Baker, Ward, and Bruskis: (1) Plaintiff's official capacity claims; (2) any intended personal capacity claims for injunctive relief; (3) Plaintiff's Eighth Amendment sexual assault and harassment claims against Defendants Goodspeed, Baker, and Ward; (4) Plaintiff's Eighth Amendment personal safety claims against Defendants Baker and Ward; and (5) Plaintiff's Fourteenth Amendment procedural due process claim against Defendant Goodspeed. The following personal capacity claims for damages remain in the case: (1) Plaintiff's First Amendment retaliation claims against Defendants Clouse, Baker,

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

and Ward; (2) Plaintiff's Eighth Amendment excessive force claim against Defendant Goodspeed; and (3) Plaintiff's Eighth Amendment deliberate indifference claim against Defendant Bruskis.

**Discussion**

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan. The events about which he complains, however, occurred at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan. Plaintiff sues the following ECF personnel in their official and personal capacities: Assistant Deputy Warden Unknown Clouse, Inspector Unknown Mackey, Hearing Investigator Unknown Goodspeed, Lieutenants Unknown Baker and Unknown Lantner, Sergeant Unknown Ward, Correctional Officer Unknown Brown, and Nurses Unknown Briskey and Unknown Bruskis. (Compl., ECF No. 1, PageID.2–3.)

Plaintiff alleges that on July 13, 2022, while housed in segregation, Defendant Goodspeed came to Plaintiff's cell, "punch[ed]" the glass window, and told Plaintiff to "get ready for court." (*Id.*, PageID.4.) Defendant Goodspeed walked away and came back ten seconds later, punched the cell window again, and said, "Have yo[ur] bitch ass by the door when I come back." (*Id.*)

Plaintiff was handcuffed and "locked inside of a hearing module being heard on a misconduct ticket." (*Id.*) After the hearing ended, Defendant Goodspeed unlocked the module and said, "It's time to go." (*Id.*) At that time, Plaintiff was still sitting on a stool and asked to see a sergeant. (*Id.*) Defendant Goodspeed snatched Plaintiff off the stool and threw Plaintiff on the floor. (*Id.*) Defendant Goodspeed and three or four other officers then dragged Plaintiff through the unit, down a flight of stairs, down B wing, and into Plaintiff's cell. (*Id.*) Plaintiff claims the officers pulled his hair the entire time. (*Id.*) Plaintiff was still handcuffed and lying on the cell floor when Defendant Goodspeed punched Plaintiff in his forehead. (*Id.*) While on his way out of the

4

cell, Defendant Goodspeed "smacked [Plaintiff] on the rear end with an open hand and called him a 'sweet bitch'" before closing the cell door. (*Id.*)

Moments later, non-party Sergeant Johnson came to Plaintiff's cell and told Plaintiff that he saw what happened via the cameras in the administrative building. (*Id.*) Sergeant Johnson removed the handcuffs, and Plaintiff showed Sergeant Johnson "two large lumps on his forehead and informed him [that] Defendant Goodspeed assaulted him. (*Id.*) Sergeant Johnson told Plaintiff that he would call medical to evaluate Plaintiff and told Plaintiff to submit a Prison Rape Elimination Act (PREA) grievance. (*Id.*)

Later that day, during the medication line, Plaintiff told Defendant Bruskis that he needed medical attention. (*Id.*, PageID.5.) Defendant Bruskis began to approach Plaintiff's cell, but non-party Officer Bludski stopped Defendant Bruskis and said, "F*** that sweet bitch." (*Id.* (asterisks added).) Defendant Bruskis looked into Plaintiff's cell, laughed, and walked away without providing medical attention. (*Id.*)

For the rest of the day, Plaintiff made several requests to staff, asking them to notify medical about his injuries and asking for medical kites, to no avail. (*Id.*) During third shift, Plaintiff told staff members that "his head was throbbing, having sharp pain, [and that he was] dizzy and . . . light-headed." (*Id.*) Plaintiff avers that the pain caused him to vomit on several occasions throughout the night. (*Id.*) Plaintiff's requests for medical kites and grievances were again denied. (*Id.*)

The next day, Plaintiff could not get out of bed due to severe pain. (*Id.*) During rounds, Plaintiff made several requests for staff to ask for medical attention, to no avail. (*Id.*) During second shift, while on the way to shower, Plaintiff told officers that he was "having sharp head pain and was light-headed." (*Id.*) Plaintiff told staff members that he needed medical attention.

(*Id.*) Plaintiff passed out while in the shower. (*Id.*) When he came to, Sergeant Johnson was standing outside, asking what happened. (*Id.*) Plaintiff told Sergeant Johnson that he still needed medical attention. (*Id.*) Sergeant Johnson said, "You still haven't seen medical yet." (*Id.*) Sergeant Johnson called for a nurse so that Plaintiff could receive medical attention. (*Id.*)

Before Defendant Briskey arrived, Plaintiff told Sergeant Johnson what Defendant Goodspeed had done. (*Id.*) Defendant Briskey arrived, examined Plaintiff, and said that Plaintiff had two lumps on his head. (*Id.*) Plaintiff tried to tell Defendant Briskey about the dizziness, pain, and severe headaches he was experiencing. (*Id.*) Defendant Briskey told Plaintiff that he did not have a concussion and gave Plaintiff an ice pack and some painkillers. (*Id.*) Sergeant Johnson took photographs with a hand-held camera and escorted Plaintiff back to his cell. (*Id.*, PageID.6.)

On July 15, 2022, Plaintiff wrote letters to Defendants Clouse and Mackey, as well as the Office of Legal Affairs, explaining what had happened, but received no responses. (*Id.*) On July 18, 2022, Plaintiff submitted a grievance and PREA complaint against Defendant Goodspeed. (*Id.*) The grievance was denied because Plaintiff had submitted a PREA complaint regarding the same situation. (*Id.*) On October 11, 2022, Plaintiff wrote kites to Defendants Mackey, Clouse, and Lantner, as well as non-parties Warden Burgess and the ECF grievance coordinator, concerning the grievance he submitted and the PREA complaint. (*Id.*) After receiving no responses, Plaintiff filed a grievance "inquiring about the PREA grievance[, stating] that it had been 80 days since Plaintiff gave the grievance to the PREA coordinator to be submitted." (*Id.*)

On October 14, 2022, Defendants Baker and Ward started calling Plaintiff names such as "rat bitch," snitch, and a "f**." (*Id.*) Defendants Baker and Ward were discussing the PREA complaint Plaintiff submitted, and said that Plaintiff should not have submitted a PREA complaint

because Plaintiff "like[s] being slapped on the ass and love[s] taking c***." (*Id.*) Defendants Baker and Ward made these comments "in front of all the inmates on upper B-wing in five block." (*Id.*)

A few minutes later, Defendant Clouse and non-party Sergeant Hill came to Plaintiff's cell, and Plaintiff told them about the comments Defendants Baker and Ward had made. (*Id.*) Defendant Clouse said that he would talk to Defendants Baker and Ward, and Sergeant Hill told Plaintiff to submit a grievance. (*Id.*)

Plaintiff submitted a grievance against Defendants Baker and Ward on October 17, 2022. (*Id.*) Later that day, non-party Sergeant Tigh reviewed a Class II misconduct that Defendant Lantner had issued to Plaintiff for interference with the administration of rules. (*Id.*, PageID.7.) Plaintiff told Sergeant Tigh that the misconduct was written to retaliate against Plaintiff for writing grievances against Defendants Goodspeed and Lantner. (*Id.*)

On October 19, 2022, Plaintiff was in an isolation cell in unit 4 when Defendant Clouse stopped and told Plaintiff that one of his PREA grievances was being denied and the other was being looked into. (*Id.*) Two days later, Defendant Clouse stopped by Plaintiff's cell again and told Plaintiff "to stop putting in grievances on his staff and maybe staff [would not] retaliate against [Plaintiff]." (*Id.*)

Later in the morning of October 19, 2022, Plaintiff was moved to a cell in unit 5, B-wing. (*Id.*) While conducting rounds, Defendant Brown stopped by Plaintiff's cell and said, "Your black ass keep writing grievances on us, Clouse already said you going to level 5 and you going to get f***[ed] and [I am going to] make sure you on [loss of privileges] for a year or two bitch." (*Id.* (asterisks added).)

On October 23, 2022, Defendant Baker stopped by Plaintiff's cell, banged on the door several times, causing the whole wing to wake up. (*Id.*) Defendant Baker then said, "You are a

f**, I'm [going to] let everyone know you like to be touch[ed] by white m[e]n." (*Id.* (asterisks added).) The next day, Defendants Baker and Ward stopped by Plaintiff's cell and said, "You [are a] snitch, a f**[,] and you love white c***." (*Id.* (asterisks added).) Defendant Ward also said, "You [are a] black snitch and you love white c*** bitch." (*Id.* (asterisks added).) A few moments later, Defendants Baker and Ward used the unit intercom to state, "Attention in the unit, Johnson in cell 127 B-lower is a snitch and he is gay. He snitches on staff and inmates." (*Id.*) Plaintiff alleges that "multiple inmates started scre[a]ming out [of] their doors[,] calling Plaintiff a snitch." (*Id.*)

On October 26, 2022, Defendant Brown stopped at Plaintiff's cell and said, "We are throwing all of your grievances out. You don't know we stick together here at Oaks,. You black n*****, [you are] going to be in hell. Only way out [is] if you kill yourself f**." (*Id.*, PageID.8 (asterisks added).)

Also on October 26, 2022, Plaintiff had a misconduct hearing. (*Id.*) Plaintiff claims that he was "forced to interact with Defendant Goodspeed after being assaulted physically, sexually assaulted[,] and verbal[ly] abused." (*Id.*) Plaintiff tried to make a statement on his own behalf, but alleges that Defendant Goodspeed deprived him of that opportunity, as well as the opportunity to "attend his own hearing." (*Id.*)

On October 31, 2022, Plaintiff wrote to MDOC's Internal Affairs and the Director's Office regarding the events set forth above. (*Id.*) Plaintiff "stated that he ha[d] submitted several medical kites and grievances," but that he believed that all of those had been thrown away. (*Id.*) Plaintiff received no response. (*Id.*)

On December 9, 2022, Defendant Mackey sent Plaintiff a memorandum stating that his PREA complaint against Defendants Baker and Ward "was being [extended] and [Plaintiff would] be notified." (*Id.*)

Plaintiff was transferred to AMF on January 15, 2023. (*Id.*) Plaintiff avers that since his arrival at AMF, he has written several letters to staff at ECF regarding his PREA complaints and other pending grievances. (*Id.*) Plaintiff alleges further that upon arrival at AMF, he "was still suffering internally with mental, emotional[,] and physical trauma from the incidents" that occurred at ECF. (*Id.*) Medical staff at AMF concluded that Plaintiff had suffered a concussion and prescribed Naproxen and Imtria. (*Id.*, PageID.9.) Plaintiff also received psychiatric treatment. (*Id.*) Plaintiff sets forth that medical staff at AMF have subsequently either increased his dosages or have changed his medications. (*Id.*)

Based upon the foregoing, the Court construes Plaintiff's complaint to assert the following claims for relief: (1) First Amendment retaliation claims; (2) Eighth Amendment claims for excessive force, sexual assault and harassment, indifference regarding Plaintiff's personal safety, and denial of adequate medical care; and (3) Fourteenth Amendment due process claims related to Plaintiff's misconduct proceedings. Plaintiff seeks injunctive relief in the form of "ordering Defendants to stop working" for the MDOC. (*Id.*, PageID.10.) Plaintiff also seeks compensatory and punitive damages. (*Id.*)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the

9

elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Official Capacity Claims

Plaintiff has sued all Defendants in their official and personal capacities. (Compl., ECF No. 1, PageID.2–3.) Plaintiff seeks injunctive relief in the form of "ordering Defendants to stop working" for the MDOC. (Compl., ECF No. 1, PageID.10.) Plaintiff also seeks compensatory and punitive damages. (*Id.*)

10

A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity, or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Moreover, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under Section 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66); *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013). Accordingly, the State of Michigan enjoys sovereign immunity from liability under Section 1983.

In *Will*, the Supreme Court concluded not only that a State was immune from Section 1983 liability as a sovereign, but also that "a State is not a person within the meaning of 1983." *Will*, 491 U.S. at 64. Those concepts are related, but distinct. The Supreme Court explained:

> This does not mean . . . that we think that the scope of the Eleventh Amendment and the scope of § 1983 are not separate issues. Certainly they are. But in deciphering congressional intent as to the scope of § 1983, the  scope of the Eleventh Amendment is a consideration, and we decline to adopt a reading of § 1983 that disregards it.

*See Will*, 491 U.S. at 66–67 (footnote omitted).  The Supreme Court determined that "Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil

liberties." *Id.* at 66. But that determination did not depend in any way on Eleventh Amendment immunity.

The *Will* case did not come to the Supreme Court by way of the lower federal courts, rather, it was filed in the Michigan Court of Claims and then appealed to the Michigan Court of Appeals and the Michigan Supreme Court. *Id.* at 61. The Court's holding, therefore, depends entirely on interpretation of Section 1983 "since the Eleventh Amendment does not apply in state courts." *Id.* at 63–64 (citation omitted).

In *Will*, the petitioner attempted to avoid the Supreme Court's holding with regard to a State's liability by noting that he had sued a state official in his official capacity and that state officials are "persons" even though they are acting in the official capacity. The Supreme Court rejected that attempt as well:

> Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. *Brandon v. Holt*, 469 U.S. 464, 471 (1985). As such, it is no different from a suit against the State itself. *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 165–166 (1985); *Monell, supra*, at 690, n. 55. We see no reason to adopt a different rule in the present context, particularly when such a rule would allow petitioner to circumvent congressional intent by a mere pleading device.
>
> We hold that neither a State nor its officials acting in their official capacities are "persons" under § 1983.

*Id*. at 71 (parallel citations and footnote omitted). Accordingly, Plaintiff fails to state a claim for monetary damages against Defendants in their official capacities upon which relief may be granted.

Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking injunctive or declaratory relief in some circumstances is permitted. The *Will* Court noted that "[o]f course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective

relief are not treated as actions against the State.'" *Id*. at 71 n.10 (quoting *Graham*, 473 U.S., at 167, n. 14) (citing *Ex parte Young*, 209 U.S. 123, 159–160 (1908)). The *Ex parte Young* doctrine is a fiction premised on the notion that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority. *Pennhurst State Sch. & Hosp.,* 465 U.S. at 114 n.25.

Nonetheless, the Supreme Court has cautioned that, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g.*, *Los Angeles v. Lyons*, 461 U.S. 95 (1983) (addressing injunctive relief); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (addressing declaratory relief). Plaintiff does not allege an ongoing violation of federal law by the named Defendants. Therefore, he cannot maintain his claims for injunctive relief against Defendants in their official capacity under the *Ex parte Young* doctrine.

Moreover, the Sixth Circuit has held that transfer to another correctional facility moots a prisoner's claims for injunctive and declaratory relief. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (holding that a prisoner-plaintiff's claims for injunctive and declaratory relief became moot when the prisoner was transferred from the prison about which he complained); *Mowatt v. Brown*, No. 89-1955, 1990 WL 59896 (6th Cir. May 9, 1990); *Tate v. Brown*, No. 89-1944, 1990 WL 58403 (6th Cir. May 3, 1990); *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991). Here,

Plaintiff is no longer confined at ECF, which is where he avers that Defendants are employed. Plaintiff's request for injunctive relief is, therefore, moot.[2]

For the reasons set forth above, Plaintiff has failed to state a claim against Defendants in their official capacities upon which relief may be granted. Accordingly, Plaintiff's official capacity claims against Defendants will be dismissed.

### B.     Personal Capacity Claims

#### 1.     Defendants Mackey and Clouse

In his complaint, Plaintiff contends that on July 15, 2022, he wrote a letter to Defendants Clouse and Mackey about the incident with Defendant Goodspeed, but did not get a response. (Compl., ECF No. 1, PageID.6.) On October 11, 2022, Plaintiff sent kites to Defendants Mackey and Clouse regarding his grievance and PREA complaint, but did not get responses. (*Id.*) Plaintiff alleges further that he spoke to Defendant Clouse about Defendants Baker and Ward's verbal harassment, and that Defendant Clouse said that he would talk to them about it. (*Id.*) On October 19, 2022, Defendant Clouse told Plaintiff that his one PREA complaint "was being denied and the other one was being look[ed] into." (*Id.*, PageID.7.) On October 21, 2022, Defendant Clouse told Plaintiff to "stop putting in grievances on his staff and maybe staff won't retaliate against him." (*Id.*) Finally, on December 9, 2022, Defendant Mackey sent a memorandum to Plaintiff notifying him that his PREA complaint against Defendants Baker and Ward was "being exten[ded] and he will be notified." (*Id.*, PageID.8.)

The Court has construed Plaintiff's complaint to assert supervisory liability claims, as well as claims related to the handling of Plaintiff's grievances and complaints, against Defendants

---

[2] The mooting effect of Plaintiff's transfer to AMF also applies to his claims for injunctive relief against Defendants in their respective personal capacities. Accordingly, any intended claims for injunctive relief against Defendants in their respective personal capacities will also be dismissed.

Mackey and Clouse. As an initial matter, various courts have repeatedly held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569– 70 (6th Cir. 2002); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Moreover, Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Thus, because Plaintiff has no liberty interest in the grievance process, any interference with the grievance process or inadequate responses to Plaintiff's grievances did not deprive Plaintiff of due process.

Moreover, to the extent that Plaintiff intended to allege that his right to petition the government was violated by any interference with the grievance process, this right is not violated by a failure to process or act on his grievances. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minesota. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Additionally, any inaction or action by Defendants Mackey and Clouse did not bar Plaintiff from seeking a remedy for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief,

15

from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances. *Cf. Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required).

Furthermore, Section 1983 liability may not be imposed simply because an official denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Moreover, to the extent that Plaintiff seeks to hold Defendants Mackey and Clouse liable due to their respective supervisory positions, he fails to state such a claim. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *See Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002); *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

"[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific

incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300);

*see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995).

Here, Plaintiff has alleged no facts suggesting that Defendants Mackey and Clouse encouraged or condoned the conduct of the other Defendants, or authorized, approved, or knowingly acquiesced in that conduct. As set forth above, Defendants Mackey and Clouse were involved in responding to Plaintiff's grievances and complaints, but that is insufficient to establish lability under Section 1983. *See Shehee*, 199 F.3d at 300.

However, Plaintiff does allege that Defendant Clouse told Plaintiff that staff would not retaliate against him if he stopped filing grievances. Given that allegation, Plaintiff has sufficiently alleged that Defendant Clouse implicitly condoned the other Defendants' conduct, or authorized, approved, or knowingly acquiesced in that conduct. The Court, therefore, will allow Plaintiff to proceed on a First Amendment retaliation claim against Defendant Clouse premised on that allegation.

Accordingly, for all the foregoing reasons, Plaintiff has failed to state a cognizable claim pursuant to Section 1983 against Defendant Mackey. The Court, therefore, will dismiss Defendant Mackey for Plaintiff's failure to state a claim upon which relief can be granted against him.

## 2.    First Amendment Retaliation

The Court has construed Plaintiff's complaint to assert First Amendment retaliation claims against Defendants Baker, Ward, Lantner, and Brown.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to

set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.*

### a.     Protected Conduct

With respect to the first element of a First Amendment retaliation claim, an inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."). In his complaint, Plaintiff sets forth facts alleging that he filed several grievances and PREA complaints against Defendants Goodspeed, Baker, and Ward. At this stage of the proceedings, Plaintiff has alleged sufficient facts to suggest that he engaged in protected conduct for purposes of his First Amendment claims.

### b.     Adverse Action and Retaliatory Motive

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendant's conduct is "*capable* of deterring a person of ordinary firmness;" the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002). Finally, to satisfy the third element of a retaliation claim, Plaintiff must allege facts that support an inference that the alleged adverse action was motivated by the protected conduct. The Court will consider whether Plaintiff has alleged sufficient facts with respect to each involved Defendant below.

### (i)    Defendants Baker and Ward

The Court has construed Plaintiff's complaint to assert retaliation claims against Defendants Baker and Ward. Plaintiff alleges that on October 13, 2022, Defendants Baker and Ward were talking about a PREA complaint that Plaintiff submitted and started calling him "names such as rat bitch, snitch[,] and a f\*\*." (Compl., ECF No. 1, PageID.6.) According to Plaintiff, Defendants Baker and Ward "said this in front of all the inmates on upper B-wing in five block." (*Id.*) Plaintiff submitted a grievance about the issue. (*Id.*) Thereafter, on October 23 and 24, 2022, Defendants Baker and Ward called Plaintiff similar names and used the housing unit's intercom system to announce that Plaintiff was a snitch. (*Id.*, PageID.7.)

"Labeling [P]laintiff a snitch in the presence of other inmates is certainly likely to deter a person of ordinary firmness from exercising the right at stake." *Crum v. Wilkinson*, No. 2:04-cv-249, 2006 WL 64607, at *4 (S.D. Ohio Jan. 11, 2006); *see also Ball v. Evers*, No. 19-10315, 2021 WL 3164273, at *9 (E.D. Mich. July 27, 2021) (holding that the defendant yelling at the plaintiff and accusing him of being a snitch as the plaintiff walked in the yard constituted an adverse action). Moreover, Plaintiff has alleged facts suggesting that Defendants Baker and Ward labeled Plaintiff as a snitch in front of other inmates because of Plaintiff's PREA complaint and grievances. Taking Plaintiff's allegations as true and in the light most favorable to him, the Court will not dismiss Plaintiff's First Amendment retaliation claims against Defendants Baker and Ward on initial review.

### (ii)    Defendant Lantner

Plaintiff contends that Defendant Lantner issued him a Class II misconduct charging Plaintiff with interference with the administration of rules to retaliate against Plaintiff "for writing a grievance on Defendant Goodspeed and another one on Defendant Lantner." (Compl., ECF No. 1, PageID.7.)

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (N.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). However, "alleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive).

Here, Plaintiff merely alleges the ultimate fact of retaliation with respect to Defendant Lantner. Nothing in Plaintiff's complaint suggests that Defendant Lantner was aware of Plaintiff's grievances and issued the misconduct to Plaintiff because of those grievances. Notably Plaintiff provides no facts regarding how Defendant Lantner alleged that Plaintiff had interfered with the administration of rules. While the Court accepts as true the fact that Defendant Lantner took an unfavorable action against Plaintiff by issuing the misconduct ticket, the Court simply cannot infer anything about Defendant Lantner's motivation and reasoning from Plaintiff's vague and conclusory allegations. Plaintiff instead appears to ask this Court to fabricate plausibility to his claim against Defendant Lantner from mere ambiguity; however, ambiguity does not support a claim. It is Plaintiff's obligation at this stage in the proceedings to plead enough factual content to permit the Court to draw a reasonable inference that Defendant Lantner acted with retaliatory

intent. *See Iqbal*, 556 U.S. at 679. Because Plaintiff has not met that initial burden, the Court will dismiss his First Amendment retaliation claim against Defendant Lantner.

### (iii)    Defendant Brown

Plaintiff alleges that on October 19, 2022, during rounds, Defendant Brown stopped at Plaintiff's cell and said, "Your black ass keep writing grievances on us, Clouse already said you going to level 5 and you going to get f***[ed] and [I am going to] make sure you on [loss of privileges] for a year or two bitch." (Compl., ECF No. 1, PageID.7 (asterisks added).)

The Court recognizes that the Sixth Circuit has held that "the mere potential threat of disciplinary sanctions is sufficiently adverse action to support a claim of retaliation." *Scott v. Churchill*, 377 F.3d 565, 572 (6th Cir. 2004). *Scott* also recognized that "the false issuance of a misconduct charge is unconstitutional retaliation." *Id.* This Court, however, has recently held that *Scott* is not applicable when a defendant "[does] not issue Plaintiff a misconduct ticket, let alone a false misconduct ticket." *Ali v. Knight*, 1:22-cv-287, 2024 WL 5497922, at *11 (W.D. Mich. Dec. 9, 2024), *R&R adopted by* 2025 WL 957176 (W.D. Mich. Mar. 31, 2025). Instead, this Court noted that *Scott* "does not hold that a mere threat to file a misconduct ticket is sufficiently adverse to deter the exercise of First Amendment rights." *See id.* (citing *Cottrell v. Hamlin*, No. 2:20-cv-12886, 2021 WL 2822932, at *1–2 (E.D. Mich. July 7, 2021)).

Here, while the Court does not condone the language allegedly used by Defendant Brown, Defendant Brown's threat that Plaintiff would "get f***ed" is too vague to rise to the level of adverse action. Moreover, Plaintiff has not alleged any facts indicating that Defendant Brown actually placed Plaintiff on loss of privileges status for a year. This threat "without following through . . . was a de minimis, literally inconsequential statement that would not deter a person of ordinary firmness from exercising his rights." *Cottrell*, 2021 WL 2822932, at *2. Plaintiff,

therefore, cannot maintain his retaliation claim against Defendant Brown for the reasons set forth above, and that claim will be dismissed.

In sum, for the reasons set forth above, Plaintiff's First Amendment retaliation claims against Defendants Lantner and Brown will be dismissed.

### 3.    Eighth Amendment Claims

The Court has construed Plaintiff's complaint to assert various Eighth Amendment claims against the named Defendants.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "[R]outine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with

"'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836.

### a.    Excessive Force

The Court has construed Plaintiff's complaint to assert an Eighth Amendment excessive force claim against Defendant Goodspeed. Plaintiff alleges that on July 13, 2022, Defendant Goodspeed pulled Plaintiff off of a stool, threw him to the floor, and dragged him by his hair through a housing unit. (Compl., ECF No. 1, PageID.4.) Plaintiff alleges further that while he was still handcuffed, Defendant Goodspeed punched him in the forehead. (*Id.*)

The Eighth Amendment prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346 (quoting *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)). Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.* However, not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson*, 503 U.S. at 9. "On occasion, '[t]he maintenance of prison

security and discipline may require that inmates be subjected to physical contact actionable as assault under common law.'" *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002)). Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)); *Bailey v. Golladay*, 421 F. App'x 579, 582 (6th Cir. 2011).

There is an objective component and a subjective component to this type of Eighth Amendment claim. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams*, 631 F.3d at 383. Courts ask "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9–10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)). The objective component requires a "contextual" investigation that is "responsive to 'contemporary standards of decency.'" *Id.* at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Although the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of

24

decency always are violated . . . [w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9.

At this stage of the proceedings, the Court must take Plaintiff's factual allegations as true and in the light most favorable to him. Given Plaintiff's allegations against Defendant Goodspeed, the Court will not dismiss Plaintiff's Eighth Amendment excessive force claim against Defendant Goodspeed on initial review.

**b.      Sexual Assault and Harassment, Verbal Harassment**

Plaintiff alleges further that as part of the use of excessive force on July 13, 2022, Defendant Goodspeed "smacked [Plaintiff] on the rear end with a[n] open hand and called him a 'sweet bitch.'" (Compl., ECF No. 1, PageID.4.) Plaintiff also contends that on several occasions, Defendants Baker and Ward sexually harassed him by calling him a "f\*\*" and by saying that Plaintiff "like[s] being slap[ped] on the ass and love[s] taking c\*\*\*." (*Id.*, PageID.6, 7.) The Court has construed these allegations to assert Eighth Amendment sexual assault and harassment claims against Defendants Goodspeed, Baker, and Ward. Plaintiff also contends that on October 26, 2022, Defendant Brown told him: "We are throwing all of your grievances out. You don't know we stick together here at Oaks. You black n\*\*\*\*\*, [you are] going to be in hell. Only way out [is] if you kill yourself f\*\*." (*Id.*, PageID.8.) The Court has construed this allegation to assert an Eighth Amendment verbal harassment claim against Defendant Brown.

"Federal courts have long held that sexual abuse is sufficiently serious to violate the Eighth Amendment[;] [t]his is true whether the sexual abuse is perpetrated by other inmates or by guards." *Rafferty v. Trumbull Cnty.*, 915 F.3d 1087, 1095 (6th Cir. 2019) (citations omitted); *Bishop v. Hackel*, 636 F.3d 757, 761 (6th Cir. 2011) (discussing inmate abuse); *Washington v. Hively*, 695 F.3d 641, 642 (7th Cir. 2012) (discussing abuse by guards). However, in the context of claims against prison officials, the Sixth Circuit has repeatedly held that the use of harassing or degrading

25

language by a prison official, although unprofessional and deplorable, does not necessarily rise to constitutional dimensions. *See, e.g.*, *Ivey v. Wilson*, 832 F.2d 950, 954–55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (concluding that harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds*, 76 F. App'x 24, 27 (6th Cir. 2003) (finding that verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim). In light of the foregoing, Plaintiff cannot maintain Eighth Amendment sexual harassment claims premised upon the comments made by Defendants Baker and Ward, and those claims will, therefore, be dismissed. Likewise, Plaintiff cannot maintain an Eighth Amendment verbal harassment claim against Defendant Brown, and that claim will also be dismissed.

Further, some courts, including the Sixth Circuit, have held that minor, isolated incidents of sexual touching coupled with offensive sexual remarks also do not rise to the level of an Eighth Amendment violation. *See, e.g.*, *Solomon v. Mich. Dep't of Corr.*, 478 F. App'x 318, 320–21 (6th Cir. 2012) (finding that two "brief" incidents of physical contact during pat-down searches, including touching and squeezing the prisoner's penis, coupled with sexual remarks, do not rise to the level of a constitutional violation); *Jackson v. Madery*, 158 F. App'x 656, 661-62 (6th Cir. 2005) (concluding that correctional officer's conduct in allegedly rubbing and grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and so failed to meet Eighth Amendment standards); *Johnson v. Ward*, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) (holding that male prisoner's claim that a male officer placed his hand on the prisoner's buttock in a sexual manner and made an offensive sexual remark did not meet the objective component of the Eighth Amendment); *Berryhill v. Schriro*, 137 F.3d 1073, 1075 (8th Cir. 1998)

(finding that, where inmate failed to assert that he feared sexual abuse, two brief touches to his buttocks could not be construed as sexual assault).

Here, although Plaintiff that Defendant Goodspeed smacked him on the buttocks and called him a "sweet bitch," Plaintiff alleges no facts that distinguish that incident from the facts present in the foregoing cases. In fact, Plaintiff's allegations are akin to those present in *Johnson*, which the Sixth Circuit concluded were not sufficient to state an Eighth Amendment claim. Plaintiff, therefore, fails to state an Eighth Amendment sexual harassment and abuse claim against Defendant Goodspeed, and that claim will also be dismissed.

### c.    Personal Safety

In his complaint, Plaintiff alleges that on two separate occasions, Defendants Baker and Ward called him a snitch in the presence of other inmates. First, Plaintiff contends that on October 13, 2022, Defendants Baker and Ward called him a snitch "in front of all the inmates on upper B-wing in five block." (Compl., ECF No. 1, PageID.6.) Plaintiff avers further that on October 24, 2022, Defendants Baker and Ward used the housing unit's intercom system to state: "Attention in the unit, Johnson in cell 127 B-lower is a snitch and he is gay. He snitches on staff and inmates." (*Id.*, PageID.7.) Plaintiff contends that after that announcement, "multiple inmates started screaming out their doors calling Plaintiff a snitch." (*Id.*)

Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer*, 511 U.S. at 833. Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). In particular, because officials have "stripped [prisoners] of virtually every means of self-protection[,]" "officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833. To establish a violation of this right, Plaintiff must show that Defendants Baker and Ward were deliberately indifferent to Plaintiff's risk of injury. *Walker v.*

27

*Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990); *McGhee v. Foltz*, 852 F.2d 876, 880–81 (6th Cir. 1988).

Labeling an inmate as a snitch certainly may constitute deliberate indifference to an inmate's safety. *See, e.g.*, *Comstock*, 273 F.3d at 699 n.2 (acknowledging that being labeled a snitch could make the inmate a target for prison attacks); *Benefield v. McDowall*, 241 F.3d 1267, 1271 (10th Cir. 2001); *see also Odom v. McKenzie*, No. 12-cv-79, 2012 WL 6214367, at *3 (E.D. Ky. Dec. 13, 2012) (citations omitted). "It does not matter whether the risk is caused by the actions of prison officials or may come at the hands of other inmates. If an inmate is believed to be a 'snitch' by other inmates, he or she faces a substantial risk of assault by other inmates." *Spotts v. Hock*, Civ. No. 10-353, 2011 WL 676942, at *2–3 (E.D. Ky. Feb. 16, 2011) (citation omitted). However, in at least one published opinion, the Sixth Circuit has held that to state a claim for deliberate indifference under the Eighth Amendment in this context, a plaintiff must allege that he or she suffered physical harm as a result of being labeled this way. *See Thompson v. Mich. Dep't of Corr.*, 25 F. App'x 357, 359 (6th Cir. 2002) (affirming district court's dismissal where plaintiff's claim that he was endangered by being labeled a snitch was unsupported by any allegation of harm); *Yaklich*, 148 F.3d at 600–01 (concluding that plaintiff failed to state an Eighth Amendment claim based upon inmate threats where he alleged no physical injury); *White v. Trayser*, No. 10-cv-11397, 2011 WL 1135552, at *6 (E.D. Mich. Mar. 25, 2011) (holding that plaintiff failed to state an Eighth Amendment claim where he alleged that defendant endangered his life by thanking him for information about illegal contraband in the presence of other inmates but failed to allege that he suffered any physical injury); *Catanzaro v. Mich. Dep't of Corr.*, No. 08-11173, 2009 WL 4250027, at *12 (E.D. Mich. Nov. 19, 2009) ("[A]n Eighth Amendment deliberate indifference claim must be grounded in an actual physical injury.").

That said, a prisoner ordinarily does not need to prove that he has been the victim of an actual attack to bring a personal safety claim; instead, he must at least establish that he reasonably fears such an attack. *Thompson v. County of Medina*, 29 F.3d 238, 242–43 (6th Cir. 1994) (holding that plaintiff has the minimal burden of "showing a sufficient inferential connection" between the alleged violation and inmate violence to "justify a reasonable fear for personal safety"); *see also Gresham v. Walczak*, No. 1:20-cv-310, 2020 WL 7872192, at *2 (W.D. Mich. Nov. 30, 2020) (holding that an officer's accusation that a prisoner was a snitch, coupled with a threat of physical harm from a prisoner, was sufficient to state an Eighth Amendment claim).

Here, Plaintiff alleges that Defendants Baker and Ward called him a snitch in front of other inmates. He also alleges that on the second occasion, after Defendants Baker and Ward called Plaintiff a snitch over the intercom, other inmates started screaming that Plaintiff was a snitch. Plaintiff's complaint, however, has no allegations that after being called a snitch, he began to experience threats of harm from other inmates. While Plaintiff need not prove that he has been the victim of an actual attack, nothing in the complaint permits the Court to infer that Plaintiff reasonably fears an attack. *See Farmer*, 511 U.S. at 834; *Thompson*, 29 F.3d at 242–43. Plaintiff's allegations are insufficient to set forth plausible Eighth Amendment personal safety claims against Defendants Baker and Ward. Accordingly, these claims will be dismissed.

### d.    Medical Care Claims

The Court has also construed Plaintiff's complaint to assert Eighth Amendment claims against Defendants Briskey and Bruskis for the denial of adequate medical care following Defendant Goodspeed's use of excessive force.

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated

when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal

quotation marks omitted), *abrogation on other grounds recognized by Lawler as next friend of Lawler v. Hardeman Cnty., Tennessee*, 93 F.4th 919, 927 (6th Cir. 2024).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence. . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

As set forth above, Plaintiff alleges that after the use of force, he had two lumps on his forehead. He also experienced dizziness, severe pain, and lightheadedness. Plaintiff's pain caused him to vomit on several occasions throughout the night immediately after the use of force. Plaintiff contends that once he arrived at AMF, medical staff there ultimately diagnosed him with a concussion and provided medications. In light of this, the Court concludes that Plaintiff has adequately alleged facts to support the objective prong of his Eighth Amendment medical care claims.

As to Defendant Bruskis, Plaintiff alleges that on the same day as the use of force, he asked for medical attention while Defendant Bruskis was passing out medications during med line. (Compl., ECF No. 1, PageID.5.) Plaintiff states that Defendant Bruskis began to approach Plaintiff's cell, but that Officer Bludski stopped Defendant Bruskis and said, "f*** that sweet

bitch." (*Id.*) Defendant Bruskis then "looked into Plaintiff's cell, laughed, and walked away without [providing] medical attention." (*Id.*) Although Plaintiff has by no means proven deliberate indifference, taking these facts as true and in the light most favorable to Plaintiff, the Court will not dismiss Plaintiff's Eighth Amendment claim against Defendant Bruskis on initial review.

With respect to Defendant Briskey, Plaintiff alleges that on July 14, 2022, Defendant Briskey arrived after Sergeant Johnson called for a nurse after Plaintiff passed out in the shower. (*Id.*, PageID.5.) Plaintiff explained his symptoms to Defendant Briskey, and Defendant Briskey examined Plaintiff. (*Id.*) Plaintiff avers that Defendant Briskey told Plaintiff "he [did not] have a concussion and gave him a[n] ice pack and some painkillers." (*Id.*)

In light of the foregoing, the Court concludes that Plaintiff has not alleged facts that rise to the level of deliberate indifference on the part of Defendant Briskey. While Plaintiff was apparently diagnosed with a concussion upon his arrival at AMF, the fact that Defendant Briskey misdiagnosed Plaintiff does not equal deliberate indifference. "[A] complaint that a physician [or medical provider] has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 105–06. This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997). Here, even though Defendant Briskey may have misdiagnosed Plaintiff, Defendant Briskey did provide treatment in the form of an ice pack and painkillers. At best, Plaintiff alleges that Defendant Briskey was perhaps negligent, which could support a state court cause of action for medical malpractice, but "errors in medical judgment or other negligent behavior" do not support an Eighth Amendment claim. *Rhinehart*, 894 F.3d at 738 (citing *Estelle*, 429 U.S. at 107–

08). Accordingly, for the foregoing reasons, Plaintiff's Eighth Amendment claim against Defendant Briskey will be dismissed.

### 4.    Fourteenth Amendment Due Process Claims

Finally, the Court has construed Plaintiff's complaint to assert Fourteenth Amendment procedural due process claims premised upon Defendant Lantner's issuance of a misconduct for interference with the administration of rules (Compl., ECF No. 1, PageID.7), as well as Plaintiff's allegation that during a misconduct hearing held on October 26, 2022, Defendant Goodspeed would not allow Plaintiff to make a statement on his own behalf and refused Plaintiff "the opportunity to attend his own hearing." (*Id.*)

A prisoner's ability to challenge a prison misconduct conviction depends on whether the conviction implicated any liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995).

Regardless of the outcome of Plaintiff's misconduct proceedings, the allegations of Plaintiff's complaint reveal that Plaintiff's misconduct charges did not fall into either of the categories identified in *Sandin* as sanctions that cannot be imposed without due process, that is, those having an inevitable effect on the duration of Plaintiff's sentence or imposing an atypical and significant hardship. As to the first category, Plaintiff has not alleged a deprivation that will inevitably affect the duration of his sentence. A prisoner like Plaintiff, who is serving an indeterminate sentence for an offense committed after 2000, can accumulate "disciplinary time" for a major misconduct conviction. *See* Mich. Comp. Laws § 800.34. Disciplinary time is considered by the Michigan Parole Board when it determines whether to grant parole. *Id.*

§ 800.34(2). It does not necessarily affect the length of a prisoner's sentence because it is "simply a record that will be presented to the parole board to aid in its [parole] determination." *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011).

As to the second category, Plaintiff sets forth no facts from which the Court could infer that he suffered a "significant and atypical deprivation." In fact, Plaintiff does not even state whether he was convicted of the Class II misconduct for interference with the administration of rules. Furthermore, Plaintiff does not allege any facts regarding the misconduct for which he appeared before Defendant Goodspeed on October 26, 2022, and whether he was even convicted of that misconduct.

In sum, for the reasons set forth above, any intended Fourteenth Amendment procedural due process claims against Defendants Lantner and Goodspeed will be dismissed.

## Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis*. Moreover, having conducted the review required by the PLRA, the Court determines that Defendants Mackey, Briskey, Lantner, and Brown will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Goodspeed, Baker, Ward, and Bruskis: (1) Plaintiff's official capacity claims; (2) any intended personal capacity claims for injunctive relief; (3) Plaintiff's Eighth Amendment sexual assault and harassment claims against Defendants Goodspeed, Baker, and Ward; (4) Plaintiff's Eighth Amendment personal safety claims against Defendants Baker and Ward; and (5) Plaintiff's Fourteenth Amendment procedural due process claim against Defendant Goodspeed. The following personal capacity claims for damages remain in the case: (1) Plaintiff's First Amendment retaliation claims against Defendants Clouse, Baker, and Ward; (2) Plaintiff's Eighth Amendment excessive force claim against

Defendant Goodspeed; and (3) Plaintiff's Eighth Amendment deliberate indifference claim against

Defendant Bruskis.

An order consistent with this opinion will be entered.


Dated:   August 12, 2025                           /s/ Sally J. Berens
                                                    SALLY J. BERENS
                                                    United States Magistrate Judge